UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

WANDA REGAN,

                Plaintiff,             **MEMORANDUM & ORDER**
                                                                               21-CV-312 (MKB)

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Wanda Regan commenced the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for Social Security disability insurance benefits under the Social Security Act (the "SSA"). (Compl., Docket Entry No. 1.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that Administrative Law Judge Margaret L. Pecoraro (the "ALJ") erred where she (1) failed to consider Plaintiff's carpal tunnel syndrome as severe, and (2) determined that Plaintiff's residual functional capacity ("RFC") included the ability to perform sedentary work through December 31, 2017, because the ALJ failed to consider all of the medical evidence presented.[1] The Commissioner cross-moves for judgment on the pleadings, arguing that substantial evidence supported the ALJ's findings.[2]

---

[1] (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 17; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 17-1; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), Docket Entry No. 20.)

[2] (Comm'r Cross-Mot. for J. on the Pleadings ("Comm'r Cross-Mot."), Docket Entry No. 19; Comm'r Mem. in Supp. of Comm'r Cross-Mot. ("Comm'r Mem."), Docket Entry No. 19-1.)

For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.

**I. Background**

On July 27, 2017, Plaintiff filed an application for disability benefits and supplemental security income due to right knee impairment, carpel tunnel syndrome, and obesity, with a disability onset date of July 1, 2013. (Certified Admin. R. ("R.") 11, 14, 118, Docket Entry No. 12.) The Social Security Administration denied her claims on October 24, 2017, (*id.* at 11, 23), and Plaintiff requested a hearing with an ALJ, (*id.* at 11). A hearing was held on December 5, 2019. (*Id.* at 64–103.) By decision dated February 27, 2020, the ALJ determined that Plaintiff (1) was not disabled at any time from July 1, 2013, the date she alleged her disability period began, through December 31, 2017, the date she was last insured,[3] and (2) became disabled on April 6, 2019.[4] (*Id.* at 12, 22.) On November 16, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering her decision final. (*Id.* at 1–5.) Plaintiff timely appealed to the Court. (*See* Compl.)

    **a. Hearing before the ALJ**

Plaintiff requested a hearing, and an administrative hearing was held before the ALJ on December 5, 2019. (R. 11, 64.) At the hearing, Plaintiff, Medical Expert Dr. Chaim Eliav, and Vocational Expert Robert Mosley ("VE Mosley") each testified.

---

[3] For claims for a period of disability and disability insurance benefits, a claimant must show that she has met the requirements of sections 416(i) and 423 of the SSA, which establish the necessary conditions of an individual's insured status. Plaintiff does not contest the ALJ determination that she met those requirements through December 31, 2017. (R. 12.)

[4] On April 6, 2019, Plaintiff's age category changed to "an individual closely approaching advanced age." (R. 19.) The ALJ determined that Plaintiff therefore became disabled on that date. (*Id.*)

### i. Plaintiff's testimony

Plaintiff testified that she was fifty years old at the time of the hearing, obtained her General Educational Development certification ("GED"), and had not worked since July of 2013. (R. 35, 71.) Her past work includes employment as a personal assistant, child-care provider, and hairdresser. (*Id.* at 71–73.)

Plaintiff stopped working after she injured her right knee when she slipped and fell at work. (*Id.* at 74.) Plaintiff had three surgeries on her knee as a result, the last one in October of 2018. (*Id.* at 75.) Plaintiff elevated her right leg six to seven hours daily. (*Id.* at 81.) A doctor prescribed a cane after her first surgery. (*Id.* at 78–79.) Plaintiff used the cane to stand and walk, and even though she was right hand dominant, she used the cane with either hand. (*Id.* at 79.) She estimated that she could walk one block using her cane, but she had "excruciating pain" walking back. (*Id.* at 79–80.) Plaintiff could sit for approximately fifteen to twenty minutes, but experienced knee, back, and leg stiffness after long periods of time. (*Id.* at 80–81.) As of the time of the hearing, Plaintiff could not stand to cook and could not do grocery shopping, but she made simple meals such as yogurt and toast, and her children cleaned, did laundry, and sometimes helped her with bathing and dressing. (*Id.* at 81–83.) Plaintiff began experiencing back pain after her knee surgeries. (*Id.* at 74, 77–78.)

Plaintiff also suffers from carpal tunnel syndrome in her right hand, which developed in 2003, but her hand was "fine" in 2013, and she could have continued working in 2013 if not for her knee injury. (*Id.* at 74, 76.) Her carpal tunnel symptoms worsened after her knee surgery, and at the time of the hearing, she had knots in her hand that prevented her from making a fist. (*Id.* at 76–77.) Plaintiff could lift and hold a gallon of milk with her left hand, but she could not hold it with her right hand. (*Id.* at 80.)

Plaintiff was in constant pain, and she typically spent her day laying down. (*Id.* at 83.) She takes Percocet, Tylenol, or Motrin daily, which reduce her pain to a level of three or four on a ten-point pain scale, without side effects. (*Id.* at 84–85.) Plaintiff also uses over-the-counter medication and a muscle relaxer, participates in physical therapy, and receives knee injections. (*Id.*)

### ii. Dr. Eliav

Dr. Eliav testified that there was evidence of a right knee injury at work in 2013, MRI and CAT scan results showing meniscal tear and arthrosis, and a total knee replacement in October of 2018. (*Id.* at 89–90.) He opined that Plaintiff had "severe, diminished function" in her right knee, and that Plaintiff would have difficulty with heavy lifting, specifically with five pounds frequently, and ten pounds on occasion. (*Id.* at 91.) In addition, he opined that Plaintiff would be able to sit for up to six hours but only stand or walk for up to two hours, and would be unable to climb stairs, squat, work on dangerous platforms, use ladders, work at heights, or work around pulmonary irritants, and could only participate in occasional reaching overhead. (*Id.* at 91–92.) Regarding the need to elevate her leg, Dr. Eliav testified that it is not clear from the record what the etiology of Plaintiff's need to elevate her leg would be, but that she would use the cane as needed. (*Id.* at 93.)

Dr. Eliav also noted that as of 2013, there was no mention of a Tinel's sign, and there were indications that Plaintiff was neurovascularly intact in both of her extremities, but that there was some limitation in shoulder range of motion in October of 2017. (*Id.* at 90–91.) As for hand manipulation, there was a Tinel's sign present as recently as 2019, but going back in time there was no indication that it was "singularly in feature." (*Id.* at 91–93.)

### iii. VE Mosley

The ALJ asked VE Mosley to assume an individual of Plaintiff's age, education, and work experience who could perform sedentary work, was unable to climb stairs or ladders, squat, kneel, crouch, or crawl, and must avoid pulmonary irritants. (*Id.* at 95.) VE Mosley testified that none of Plaintiff's prior work met those criteria, but that the hypothetical worker could perform jobs such as surveillance system monitor, food and beverage order clerk, and touch-up screener, printed circuit boards, each of which he testified had over 100,000 jobs nationally. (*Id.* at 95–96.) VE Mosley also testified that an individual limited to occasional overhead reaching with both arms could still perform the identified jobs. (*Id.* at 96.)

Plaintiff's attorney then asked VE Mosley whether the jobs could be performed assuming the required use of a cane while standing or walking and with the limitations of sitting for no more than six hours and standing and walking for no more than two. (*Id.* at 97.) VE Mosley testified that the jobs he identified could be performed sitting or standing and that the worker could sit for the entire six hours and still be able to perform the job duties, but that the jobs could not be performed while standing using only one hand. (*Id.* at 97–100.)

### b. Additional medical evidence

Plaintiff also provided the October 13, 2017 medical report from Dr. Olga Yevsikova, a consultative examiner, that Dr. Eliav discussed during his testimony. (R. 457–61.) The medical report diagnosed Plaintiff with bilateral knee pain, left knee osteoarthritis, and right hand carpal tunnel syndrome. (*Id.* at 460.) The medical report stated that Plaintiff had moderate limitations to "heavy lifting, heavy carrying, pulling, pushing[,] . . . climbing stairs, prolonged walking, [and] prolonged standing," and "mild to moderate limitation to prolonged sitting" and "to perform overhead activity and reaching with both arms." (*Id.* at 460–61.) The report also stated

5

that Plaintiff should avoid "unprotected heights, . . . any activity that can put her at risk for [a] fall, . . . [and] repetitive movements with her right hand." (*Id.*)

The ALJ also considered a report from Dr. Robert Garroway, who examined Plaintiff in August of 2017 in connection with her worker's compensation claim. (*Id.* at 18, 433–35.) Dr. Garroway opined that Plaintiff was unable to perform certain job duties due to her physical limitations, such as bending/twisting, climbing stairs/ladders, kneeling, operating heavy equipment, walking, pulling/pushing, operation of motor vehicles, sitting, and standing. (*Id.* at 18, 435.) Dr. Garroway stated that Plaintiff's prognosis for recovery was "poor," and that her limitations would "apply for 15+ days." (*Id.* at 435.)

After the hearing, Plaintiff provided a note to the ALJ from Dr. Emmanuel Decade, Plaintiff's physician, that stated Plaintiff had been under treatment for chronic sinusitis and allergies to environmental substances, had been under treatment for carpal tunnel syndrome since 2014, and had "severe OA of knee[s] from MRI results" that showed she had "weak lower extremities and pain" for which she took Percocet. (*Id.* at 33.)

c. **The ALJ's decision**

By decision dated February 27, 2020, the ALJ determined that Plaintiff (1) was not disabled at any time from July 1, 2013, the date she alleged her disability period began, through December 31, 2017, the date she was last insured, and (2) became disabled on April 6, 2019. (*Id.* at 12.) In arriving at her conclusion, the ALJ conducted the five-step procedure for evaluating disability claims.[5] (*Id.* at 14–19.)

---

[5] The five-step sequential process outlined by the SSA considers:
(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

6

At step one, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged date of her disability onset. (*Id.* at 14.) At step two, the ALJ found that Plaintiff had (1) dysfunction of major joints, (2) lumbar disc disease, and (3) obesity, which the ALJ determined were all severe impairments. (*Id.*) The ALJ found that although Plaintiff was diagnosed with carpal tunnel syndrome, it was non-severe.[6] (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the criteria of a listed impairment, specifically either the "[m]ajor dysfunction of a joint" or "[s]pine disorder" listings. (*Id.* at 15.) The ALJ then assessed Plaintiff's RFC, and determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a)[7] except that she (1) is limited to occasional overhead reaching with the bilateral upper extremities; (2) is unable to climb stairs or ladders, squat, kneel, crouch, or crawl; (3) would need to avoid pulmonary irritants such as dust, fumes, odors, gases, and poor ventilation; and (4) uses a cane for ambulation. (*Id*. at 15.) The ALJ noted that in determining Plaintiff's RFC, she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with

---

> assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)); *see also* 20 C.F.R. § 416.920(a).

[6] The ALJ also found that Plaintiff was diagnosed with headache, bilateral axillary lymphadenopathy, and hypertension, which she found were also all non-severe. (R. 14.)

[7] 20 C.F.R. §§ 404.1567(a) and 416.967(a) define sedentary work as involving "lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles . . . . Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary . . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

7

the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)." (*Id.* at 15–16.)

The ALJ found that, given this RFC, Plaintiff could not perform her past relevant work, (*id.* at 19), but could have performed other work existing in significant numbers in the national economy until April 6, 2019, the date Plaintiff's age category changed, (*id.* at 20–21). Specifically, the ALJ found that Plaintiff would have been able to perform the requirements of representative occupations such as surveillance systems monitor, food and beverage order clerk, and touch-up screener. (*Id.*) The ALJ therefore concluded that Plaintiff was not under a disability within the meaning of the SSA at any time through December 31, 2017. (*Id.* at 21.)

**II. Discussion**

    **a. Standard of review**

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citing *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same). Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)); *see also Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) (same). In

deciding whether substantial evidence exists, the court "defer[s] to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)); *see also Spottswood v. Kijakazi*, No. 23-54, 2024 WL 89635 (2d Cir. Jan. 9, 2024) (same). If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision. *See, e.g.*, *Colgan v. Kijakazi*, 22 F.4th 353, 364 (2d Cir. 2022) (remanding because substantial evidence did not support the Commissioner's decision); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (first citing 42 U.S.C. § 405(g); and then citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). The Social Security Act "must be liberally applied, for it is a remedial statute intended to include not exclude." *Moran*, 569 F.3d at 112; *see also Dany Z. v. Saul*, 531 F. Supp. 3d 871, 881 (D. Vt. 2021) ("In its deliberations, a court should bear in mind that the Social Security Act is 'a remedial statute to be broadly construed and liberally applied.'" (quoting *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981))).

### b. The ALJ erred in her step two and RFC determinations

The ALJ's decision requires remand because she failed to consider evidence from Plaintiff's treating physician regarding Plaintiff's carpal tunnel syndrome in determining that (1) Plaintiff's carpal tunnel syndrome does not result in more than minimal limitations and is not severe and (2) Plaintiff's RFC determination showed she was capable of sedentary work because for the years in question, "[t]here [were] no significant treatment records . . . that support the level of severity alleged" for Plaintiff's carpal tunnel syndrome. (R. 17–18.)

#### i. The ALJ's step two determination was in error

Plaintiff argues that the ALJ erred at step two of the sequential evaluating process where she determined that Plaintiff's carpal tunnel syndrome does not result in more than minimal

9

limitations and is not severe. (Pl.'s Mem. 13–15.) Plaintiff argues that the ALJ improperly relied on Dr. Eliav's testimony at the December 2019 hearing, and did not consider a letter from Dr. Emmanuel Decade, Plaintiff's physician, provided to the ALJ after the hearing, that stated Plaintiff had been under his treatment for carpal tunnel syndrome since 2014. (*Id.* at 14–15.)

The Commissioner argues that there was no evidence that Plaintiff's ability to perform related basic work activities was significantly limited by her carpal tunnel syndrome, and that Plaintiff's limitations were attributable to shoulder limitations rather than her carpal tunnel syndrome. (Comm'r Mem. 15–16.)

In the second step of the five-step analysis, the ALJ must determine whether a claimant has a severe impairment or a combination of impairments. An impairment is considered "severe" if it significantly limits an individual's physical or mental abilities to do basic work activities and persists for at least twelve months. SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1520(c); *see also Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 279–80 (S.D.N.Y. 2019). Basic work functions are related to an individual's ability and aptitude to perform most jobs such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations." *Cardoza*, 353 F. Supp. 3d at 279–80 (alterations in original) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)); 20 C.F.R. § 404.1522(b); *George A. v. Comm'r of Soc. Sec.*, No. 20-CV-691, 2021 WL 2102527, at *5 (W.D.N.Y. May 25, 2021). A severe impairment must persist for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (Disability involves impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). An impairment is considered "not severe" if it only has a minimal effect on an

individual's ability to perform basic work functions. SSR 96-3p, 1996 WL 374181, at *1; *see Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987). The "mere presence" of a disease or impairment or a diagnosis on its own is not sufficient to make the condition severe. *Bourdier v. Saul*, No. 19-CV-205, 2020 WL 705211, at *6 (E.D.N.Y. Feb. 12, 2020) (first citing *Taylor*, 32 F. Supp. 3d at 265; then citing *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)); *Linval v. Comm'r*, No. 22-CV-3262, 2023 WL 6121703, at *9 (S.D.N.Y. Sept. 19, 2023) (same). However, "the standard for finding of severity under Step Two of the sequential analysis is de minimis and is intended only to screen out the very weakest cases." *McIntyre*, 758 F.3d at 151. The burden is on the plaintiff to establish that any impairment they allege is severe. *Dixon v. Shalala*, 54 F.3d 1019, 1030–31 (2d Cir. 1995).

The ALJ erred in her determination that Plaintiff's carpal tunnel syndrome was non-severe because the ALJ's opinion did not consider the additional evidence offered by Plaintiff's treating physician. The ALJ determined that Plaintiff's carpal tunnel syndrome was non-severe because, among other things, Plaintiff's Tinel's sign test had been negative; wrist inspection and palpation showed no tenderness, swelling, or deformities; range of motion had been full and painless in all planes, and without crepitance; an October of 2017 examination revealed that hand and finger dexterity was intact and that grip strength in the right hand was 4 to 5/5 with poor effort; Plaintiff was able to hold her cane in her right hand with good grip and was supporting herself with her right hand during the October of 2017 examination; and Dr. Eliav testified that the carpal tunnel did not relate back to the relevant period prior to the established onset date based on the overall treatment record. (R. 14.) The ALJ did note during her RFC determination that an examination from 2015 showed positive Tinel's sign in Plaintiff's right hand, but concluded that there were no significant treatment records from 2016 that supported the level of severity alleged. (*Id.* at 17.)

11

In support of Plaintiff's argument that the ALJ improperly concluded that her carpal tunnel syndrome was not severe, she points to the letter written by Dr. Decade, in which he stated that Plaintiff had "been under treatment for right wrist carpal tunnel syndrome [since] 2014," (*id.* at 33), as well as an opinion from the October of 2017 medical report stating that Plaintiff should "avoid repetitive movements with her right hand," (*id.* at 461). Although the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe," *Bourdier*, 2020 WL 705211, at *6 (internal quotation marks omitted), "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis*," *McIntyre*, 758 F.3d at 151. The ALJ in her step two analysis considered the medical report from October of 2017, but failed to note that the same medical report indicated that Plaintiff should "avoid repetitive movements with her right hand." (R. 14, 461.) The ALJ also relied on Dr. Eliav's testimony that "the carpal tunnel d[id] not relate back to the relevant period prior to the established onset date based on the overall treatment record," but the letter from Dr. Decade was submitted after the hearing, and there is no evidence that Dr. Eliav's testimony considered Dr. Decade's statement that Plaintiff had been under treatment for carpal tunnel syndrome since 2014. (*Id.* at 14, 33.) In addition, the ALJ did not discuss Dr. Decade's letter in her step two analysis. (*Id.* at 14, 17–18.) As a result, the Court cannot conclude that the ALJ considered all of the relevant evidence from the October of 2017 medical report or Dr. Decade's letter in her step two determination. *See, e.g.*, *Garces v. Comm'r*, No. 21-1075, 2022 WL 4350109, at *1 (2d Cir. Sept. 20, 2022) (quoting *Lopez v. Sec'y of Dept. of Health & Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984), for the proposition that remand is appropriate "where the ALJ failed to consider relevant probative evidence"); *Linval*, 2023 WL 6121703, at *9–10 (concluding the ALJ "erred by ignoring or misinterpreting evidence that suggested that [p]laintiff's carpal tunnel syndrome rose above the *de minimis*

12

standard" where it misinterpreted one medical report and relied upon another that was "stale" because, among other things, it did not take into account medical records demonstrating the plaintiff's carpal tunnel syndrome diagnosis and examinations detailing her symptoms); *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), ("It is true that medical source opinions that are 'conclusory, stale, and based on an incomplete medical record' may not be substantial evidence to support an ALJ finding." (quoting *Griffith v. Astrue*, No. 08–CV–6004, 2009 WL 909630, at *9 n.9 (W.D.N.Y. July 27, 2009))), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).

### ii. The ALJ's failure to consider Dr. Decade's letter in making her RFC determination requires remand

Plaintiff argues that the ALJ also erred in her evaluation of the medical opinion evidence in determining Plaintiff's RFC because the ALJ improperly credited medical opinion evidence that supported her finding while not crediting the same medical opinions as to evidence that conflicted with her finding. (Pl.'s Mem. 15–16.) Plaintiff argues that the ALJ therefore failed to properly analyze the "consistency and supportability" of the doctors' opinions. (*Id.* at 16.)

The Commissioner argues that the uncredited portions of the medical opinions were unsupported by the overall record. (Comm'r Mem. 18–19.)

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1); *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015); *Penny Ann W. v. Berryhill*, No. 17-CV-1122, 2018 WL 6674291, at *4 (N.D.N.Y. Dec. 19, 2018). With respect to a claimant's physical abilities, an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). For example, "a limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability

13

to do past work and other work." *Id.* "In determining a claimant's RFC, '[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history.'" *Perez v. Berryhill*, No. 17-CV-3045, 2019 WL 1324949, at *4 (E.D.N.Y. Mar. 25, 2019) (alteration in original) (quoting *Crocco v. Berryhill*, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017)); *see also Barry*, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain." (quoting 20 C.F.R. § 416.945(a)(3))). An ALJ "may not 'arbitrarily substitute [his] own judgment for competent medical opinion.'" *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)); *Santangelo v. Saul*, No. 18-CV-6199, 2019 WL 4409339, at *8 (W.D.N.Y. Sept. 16, 2019) ("[A]n ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

An RFC of "[s]edentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*; *see, e.g.*, *Penfield v. Colvin*, 563 F. App'x 839, 840 n.1 (2d Cir. 2014) (noting that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about [two] hours of an [eight]-hour workday, and sitting should generally total approximately [six] hours of an [eight]-hour workday"). "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5 (Jan. 1,

14

1983); *see also Webster v. Comm'r of Soc. Sec.*, No. 18-CV-6863, 2020 WL 38725, at *5 (E.D.N.Y. Jan. 2, 2020) (same).

The ALJ must evaluate the persuasiveness of each medical source according to several factors such as: supportability, consistency, relationship with claimant, specialization, and other factors.[8] 20 C.F.R. § 404.920c(c); *Colgan*, 22 F.4th at 359 n.2 ("Pursuant to the new regulation, the ALJ will consider a series of factors, including, *inter alia*, supportability, consistency, relationship to the claimant, and specialization when evaluating a medical opinion."); *Acarkan v. Saul*, No. 20-CV-2580, 2021 WL 4356018, at *1 (E.D.N.Y Sept. 24, 2021) ("[T]he persuasiveness of each medical source is evaluated according to several factors: supportability, consistency, relationship with claimant, specialization, and other factors." (citing 20 C.F.R. § 404.1520c(c))). Supportability and consistency are the most significant factors to consider and the ALJ is not required to consider the other factors in its analysis. 20 C.F.R. §§ 404.1520c(a) and (b)(2); *Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) ("The regulations explain that when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings, the most important factors . . . are supportability . . . and consistency." (alteration in original) (internal quotation marks omitted)). The ALJ must explain how she considered the supportability and consistency factors when determining the persuasiveness of a medical source's opinion. *Krystle H. v. Comm'r of Soc. Sec.*, No. 20-CV-855, 2022 WL 888225, at *3 (N.D.N.Y. Mar. 25, 2022). "If the ALJ fails adequately to explain the supportability or consistency factors or bases her explanation upon a misreading of the

---

[8] On January 18, 2017, the Social Security Administration published a final rule that changed the protocol for evaluating medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416). The "new regulations apply only to claims filed on or after March 27, 2017." *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). Plaintiff filed her claim on July 27, 2017, and her claims are therefore subject to the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c.

record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (internal quotation marks omitted), *report and recommendation adopted*, No. 19-CV-4630, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631, 2020 WL 5820566, at *11 (E.D.N.Y. Sept. 30, 2020) (remanding the case because the ALJ failed to properly evaluate the supportability and consistency of the medical opinions provided); *Jackson v. Comm'r of Soc. Sec.*, No. 16-CV-6183, 2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019) ("It is legal error for the ALJ to create an RFC which conflicts with portions of a medical source statement that was accorded great weight without explaining the inconsistency.").

### 1. The ALJ properly considered Drs. Garroway's and Yevsikova's opinion evidence

The ALJ properly considered the opinions of Drs. Garroway and Yevsikova when determining that there was not support in the record for a limitation for prolonged sitting.

In support of her argument that the RFC should have incorporated limited prolonged sitting, Plaintiff points to the ALJ's finding that the opinions of Drs. Garroway and Yevsikova were persuasive to the extent they supported "limitations in terms of standing, walking, kneeling," and "lifting, carrying, or climbing," but unpersuasive with respect to limiting repetitive movements of Plaintiff's right hand and prolonged sitting. (Pl.'s Mem. 15.) The ALJ concluded that although the record as a whole supported Dr. Garroway's determination that Plaintiff had limitations in standing, walking, kneeling, and climbing, it reflected inconsistent treatment and generally stable physical examinations for the remaining limitations, such as sitting. (R. 18.) The ALJ observed that Dr. Garroway "noted limitations would be present for a limited duration of 15+ days and that [Plaintiff's] return to work would be further discussed with [Plaintiff]." (*Id.*)

16

In reaching the conclusion that the record did not support a limitation for prolonged sitting, the ALJ considered the reports in full and credited those portions that were both supported by and consistent with the record as a whole. *See, e.g.*, *Jackson*, 2019 WL 7283518, at *7 (noting that an ALJ may not "credit[] evidence that support[ed] [its] administrative findings while ignoring conflicting evidence from the same source"); *cf. Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (noting that although the ALJ "cannot simply selectively choose evidence in the record that supports [its] conclusions," the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," but the plaintiff was "entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits" (citation omitted)).[9]

## 2. The ALJ erred by failing to consider Dr. Decade's letter

The ALJ's analysis regarding Plaintiff's limitations due to her carpal tunnel syndrome was in error. The ALJ concluded that Dr. Yevsikova's opinion was "unpersuasive with respect to limiting repetitive movement of the right hand as even during the evaluation she had good grip supporting herself with her weight, and [cane] with the right hand," and that "there [was] no indication of a moderate restriction to prolonged sitting." (R. 18–19.)

---

[9] Plaintiff argues that the ALJ erred at step five of the sequential evaluating process where she relied on VE Mosley's testimony, because the ALJ posed a hypothetical question to VE Mosley that did not include all of Plaintiff's limitations, namely her required use of a cane. (Pl.'s Mem. 17.) The ALJ did consider Plaintiff's use of a cane in determining her RFC. At the prompting of Plaintiff's counsel, the ALJ posed a hypothetical question to VE Mosley regarding Plaintiff's use of a cane. (R. 99–100.) The ALJ further noted in her decision that VE Mosley's professional opinion considered "use of a cane." (*Id.* at 21.) The ALJ therefore properly considered Plaintiff's use of a cane as contemplated when determining her RFC, and did not err at step five of her determination as to that limitation. *See, e.g.*, *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence and accurately reflect the limitations and capabilities of the claimant involved." (citations omitted)); *Joann G. v. Comm'r of Soc. Sec.*, No. 23-CV-102, 2024 WL 108678, at *2 (W.D.N.Y. Jan. 10, 2024) (same).

The ALJ found that for the years in question "[t]here [were] no significant treatment records . . . that support the level of severity alleged" for Plaintiff's carpal tunnel syndrome, but failed to discuss Dr. Decade's letter. (*Id.* at 17–18.) Given that the letter stated that Plaintiff had been under treatment for carpal tunnel syndrome since 2014,[10] (*id.* at 33), the ALJ's failure to consider the letter in her assessment of Plaintiff's RFC requires remand. *See, e.g.*, *Rivera*, 2020 WL 8167136, at *14 ("If the ALJ fails adequately to explain the supportability or consistency factors, . . . remand is required." (internal quotation marks and citation omitted)).

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and remands for the ALJ to consider in particular the additional evidence offered indicating that Plaintiff has been under treatment for carpal tunnel syndrome since 2014. The Court denies the Commissioner's cross-motion for judgment on the pleadings. The Clerk of Court is directed to close this case.

Dated: March 25, 2024
      Brooklyn, New York

SO ORDERED:

        s/ MKB
MARGO K. BRODIE
United States District Judge

---

[10] To the extent the ALJ did not consider Dr. Decade's letter to be a "significant treatment record" as a result of its lack of detail, the Court notes that the ALJ has a duty to "affirmatively develop the record," *Moran*, 569 F.3d at 112 (internal quotation omitted); *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (same). *See also Linval*, 2023 WL 6121703, at *9 ("Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is appropriate." (internal quotation marks and citation omitted)).